## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Select Comfort Corporation, | Court File No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Gentherm, Inc.<br>f/k/a Amerigon, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Select Comfort Corporation ("Select Comfort"), for its Complaint against Defendant Gentherm, Inc. f/k/a Amerigon, Inc. ("Gentherm") states:

### <u>NATURE OF THIS ACTION</u>

1.      This is an action arising under the United States Patent Act, 35 U.S.C. § 1 *et. seq.*, or in the alternative, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2.      Certain current and former Select Comfort employees, who were under an obligation to assign their inventions and patent rights to Select Comfort, are rightful co-inventors of U.S. Patent Nos. 8,322,975, 8,402,579, 7,966,835, 8,191,187, 8,065,763, 7,877,827, 7,996,936, 8,181,290 and any other related patents assigned to Gentherm or patent applications claiming the same or similar subject matter, including without limitation, all divisional patents and continuation patents thereof (collectively, the "Patents-in-Suit").

3.      In the alternative, Select Comfort requests a declaration (i) that the Patents-in-Suit are not enforceable, (ii) that U.S. Patent Nos. 8,322,975, 8,402,579, and 7,966,835

are not enforceable, and/or (iii) that Select Comfort's DualTemp™ Layer product does not infringe any valid claim of U.S. Patent Nos. 8,322,975, 8,402,579, or 7,966,835.

## PARTIES

4.      Select Comfort is a Minnesota corporation with its principal place of business in Minnesota.

5.      On information and belief, Gentherm is a Michigan corporation and its principal place of business is in either Michigan or California.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  Venue lies in this District under 28 U.S.C. § 1391(b) and (c).

7.      This Court has personal jurisdiction over Gentherm.  On information and belief, Gentherm has purposefully, continuously, and systematically conducted business in Minnesota by, *inter alia*, directly and indirectly marketing, advertising, and selling its products throughout the United States, including in Minnesota.  On information and belief, Gentherm sells its products to companies that are located in Minnesota, and Gentherm's products are in turn sold to consumers in Minnesota.

8.      Further, Gentherm has willfully engaged in activity that has caused and continues to cause harm to Select Comfort, a Minnesota resident, including but not limited to having conducted business with Select Comfort in Minnesota regarding the subject matter of the Patents-in-Suit and improperly filing and obtaining patents in which Select Comfort has a common interest.

## ACTUAL AND JUSTICIABLE CONTROVERSY

9.    Certain current and former Select Comfort employees conceptualized and contributed significantly to the development of the subject matter disclosed and claimed in the Patents-in-Suit before and during Select Comfort's joint development work with Gentherm (the "Select Comfort Inventors").  The Select Comfort Inventors are therefore rightful co-inventors of the Patents-In-Suit, and should be listed as such on the face of the Patents-In-Suit.  Because the Select Comfort Inventors are and were under an obligation to assign their inventions and patent rights to Select Comfort, Select Comfort is a rightful assignee of the Patents-in-Suit, and should be listed as such on the face of the Patents-In-Suit.

10.    On August 2, 2013, Gentherm's counsel sent a letter to Select Comfort alleging, *inter alia*, that Select Comfort's DualTemp™ Layer product infringes three of its patents (U.S. Patent Nos. 8,322,975, 8,402,579, and 7,966,835).

11.    Gentherm's letter demanded that Select Comfort immediately cease and desist from further making, using, offering for sale, selling, or distributing within the United States its allegedly-infringing DualTemp™ Layer product; pay to Gentherm, as monetary damages for the alleged patent infringement, Gentherm's lost profits based upon Select Comfort's past sales; and pay to Gentherm its attorneys' fees and costs.

12.    Thus, in addition to the actual controversy regarding the inventorship of the Patents-in-Suit, an actual and justiciable controversy exists between the parties based on Gentherm's letter and express claims concerning the infringement of U.S. Patent Nos. 8,322,975, 8,402,579, and 7,966,835.

## FACTS

13.    Select Comfort designs, manufactures, and markets unique air bed products, many features of which are either proprietary or protected by the patent laws of the United States.

14.    Select Comfort's Sleep Number® bed uses uniquely designed air chambers to provide a gentle cushion of support which can be easily adjusted to an individual's preference, comfort level, and firmness.

15.    Select Comfort's Sleep Number® bed offers a dual firmness feature, in which two users can individually adjust the bed to their own desired firmness setting.

16.    As a result of the innovation and quality of its products, together with the widespread advertising and promotion thereof, Select Comfort has acquired a reputation for quality, integrity, and innovation, and it is well-known as the leading seller of premium air-supported sleep products.

17.    For over a decade, Select Comfort has been researching, developing, and innovating active and passive temperature control solutions for beds, bedding products, and sleepers for whom temperature is a barrier to a restful night's sleep.

18.    Select Comfort has conducted studies validating that temperature regulation/control is a significant barrier to sleep, and has been actively innovating technology and solutions to address this issue in the bedding industry.

19.    In August 2006, Select Comfort commissioned an internal study evaluating consumer assessment of various of Select Comfort's innovation concepts, including temperature control solutions for beds/bedding products.

20.    The study revealed that Select Comfort's innovations regarding temperature control and regulation were one of the highest rated among bedding consumers.

21.    Select Comfort therefore decided to pursue development of a temperature control sleep system that is capable of controlling and/or regulating the surface temperature of its beds throughout the night using various available technologies, such as air or liquid, to cool or heat the sleeping surface of its beds.

22.    Select Comfort wanted the user to have the ability to select a desired temperature (within a reasonable range) throughout the night or until the feature was turned off.

23.    In August 2006, Select Comfort memorialized its innovation and developed a list of specifications, requirements, and other design/functional characteristics that it deemed the temperature control sleep system must possess to be successful.

24.    One such characteristic was that the temperature control system have dual capability (i.e. that each side of the mattress could be individually adjusted), to coordinate with its dual firmness features.

25.    Select Comfort pursued this development of its temperature control innovation in collaboration with several third party companies as a joint development effort, with which Select Comfort would have cross-functional representation, including engineering, marketing, supply chain, and consumer insight personnel.

26.    Through one of its employees with a background in the automobile industry, Select Comfort became aware that Gentherm (at that time known as Amerigon, Inc.) was involved with temperature controlled seats in automobiles.

27.    Upon information and belief, Gentherm had not previously worked in or developed products for the bedding industry.

28.    Select Comfort contacted Gentherm and inquired about Select Comfort's proposal to develop dual adjustable temperature technology, to which Gentherm expressed interest and a desire to expand its business from the automobile industry to the bedding industry.

29.    Based on Select Comfort's innovation, the parties thereafter set out to jointly develop an air-based solution, as opposed to a water-based solution, to control and/or regulate the temperature of the sleeping surface of a mattress by integrating Gentherm's thermoelectric devices with and/or into a Sleep Number® bed.

30.    In October and November 2006, Select Comfort and Gentherm held discussions and meetings regarding this project.

31.    These meetings included engineers and management personnel and focused on Select Comfort's innovation and product vision and the consumer research that Select Comfort had performed.

32.    The parties also discussed strategy, engineering hurdles, and functional/performance specification needs.

33.    Shortly thereafter, Select Comfort sent Gentherm one of its Sleep Number® beds to facilitate the development process.

34.    The Select Comfort Inventors worked with Gentherm employees to develop a suitable temperature control technology for mattresses and the Sleep Number® bed in particular.

35.    Recognizing that the parties' development of an active temperature control solution for a mattress was a collaborative project, and that Select Comfort would be co-developing the product/embodiment of Select Comfort's innovation, Gentherm sent a draft Common Development Agreement to Select Comfort in October 2006.

36.    Gentherm noted that the Common Development Agreement was a first draft and would require several rounds of revision before it was complete.

37.    Select Comfort and Gentherm continued to negotiate their business relationship and co-ownership of the jointly-developed intellectual property.

38.    But, on information and belief, the parties never finalized or executed the Common Development Agreement.

39.    Following the parties' discussions, a prototype air-based temperature control system integrating Gentherm's thermoelectric devices into a Sleep Number® bed was created.

40.    The initial prototype, however, had several design, functional, and commercial issues, including comfort, complexity, and cost.

41.    Select Comfort's engineers and management personnel thereafter continued to work with Gentherm to address these and other functional and design issues.

42.    During the Fall of 2006, Select Comfort began parallel research and development into a water-based solution to actively control/regulate the sleeping surface temperature of a mattress.

43.    In early 2007, Select Comfort commissioned a confidential consumer study in Chicago, Illinois to evaluate consumers' reaction to its air-based and water-based

temperature control solutions for mattresses, which included the prototype that Gentherm and Select Comfort had created.

44.    Select Comfort decided to pursue a water-based solution instead of an air-based solution.

45.    Throughout 2007, Select Comfort considered multiple companies with which it might enter into a joint development relationship for a water-based temperature control sleep system.

46.    On October 8, 2007, Select Comfort filed a provisional patent with the United States Patent and Trademark Office ("USPTO") for its invention of a bedding system that incorporates a provision to actively control and regulate the surface temperature of the bed.

47.    During the course of the parties' co-development and thereafter, Gentherm secretly began filing patent applications covering Select Comfort's ideas, inventions, and the parties' co-developed ideas and designs regarding active temperature control solutions for beds, which are related to or issued as the Patents-In-Suit.

48.    On information and belief, Gentherm did not disclose to the USPTO Select Comfort or the Select Comfort Inventors' role with respect to the invention, conception, and/or reduction to practice of the subject matter of the patent applications it filed regarding temperature control solutions for beds.

49.    Gentherm did not list any of the Select Comfort Inventors as inventors of the Patents-in-Suit.

50.    In 2008, Select Comfort temporarily ceased further work on a temperature control sleep system.

51.    In 2009 and 2010, Select Comfort revisited the idea of developing a temperature control sleep system with dual temperature adjustability.

52.    Select Comfort ultimately created and developed a product that it named the DualTemp™ Layer, which allows users to select an ideal temperature to heat or cool one side of the bed at the touch of a button.

53.    Select Comfort filed a non-provisional patent covering its innovations embodied in the DualTemp™ Layer product in December 2012.

54.    Sleep Number currently sells its DualTemp™ Layer product nationwide at Select Comfort retail stores in major shopping malls and other locations, through the company's national direct marketing operations, as well as through Select Comfort's website at selectcomfort.com and sleepnumber.com.

55.    On information and belief, Gentherm currently sells a product it calls Climate Control Sleep System™, a product which features dual temperature adjustability with both heating and cooling options.

56.    Gentherm has filed numerous Patents covering temperature control solutions for beds, including without limitation, U.S. Patent No. 8,322,975 dated December 18, 2012, U.S. Patent No. 8,402,579 dated March 26, 2013, U.S. Patent No. 7,966,835 dated June 28, 2011, U.S. Patent No. 8,191,187 dated June 5, 2012, U.S. Patent No. 8,065,763 dated November 29, 2011, U.S. Patent No. 7,877,827 dated

February 1, 2011, U.S. Patent No. 7,996,936 dated August 16, 2011, and U.S. Patent No. 8,181,290 dated May 22, 2012.

57.   Gentherm has improperly failed to list the Select Comfort Inventors as inventors for any of the Patents-in-Suit.

## COUNT ONE
### (CO-INVENTORSHIP)

58.   Select Comfort repeats the allegations above as if fully set forth herein.

59.   Select Comfort's claim of co-inventorship arises under the Patent Act, 35 U.S.C. § 1 *et. seq.*, including, but not limited to, 35 U.S.C. §§ 116 and 256.

60.   The Patents-in-Suit list individuals as the sole inventors of the Patents-in-Suit, and those individual inventors assigned the Patents-in-Suit either to Gentherm, Inc. or Amerigon, Inc.

61.   The Select Comfort Inventors conceptualized and contributed significantly to the development of the subject matter disclosed and claimed in the Patents-in-Suit before and during Select Comfort's joint development work with Gentherm, which began in approximately 2006.  The Select Comfort Inventors are therefore rightful co-inventors of the Patents-in-Suit.

62.   Because the Select Comfort Inventors are and were under obligation to assign their inventions and patent rights to Select Comfort, Select Comfort is a rightful assignee of the Patents-in-Suit.

63.   The omission of these Select Comfort employees as inventors of the Patents-in-Suit was erroneous.

64.    Select Comfort is entitled to have the inventorship of the Patents-in-Suit corrected to reflect that the Select Comfort Inventors are co-inventors and that Select Comfort is an assignee of the Patents-in-Suit.

## COUNT TWO
## (DECLARATORY JUDGMENT OF NON-ENFORCEABILITY)

65.    Select Comfort repeats the allegations above as if fully set forth herein.

66.    In the alternative to Count One, there is an actual and justiciable controversy between the parties concerning the enforceability of the Patents-in-Suit, arising under the Patent Act, 35 U.S.C. § 1 *et. seq.*

67.    Upon information and belief, Gentherm omitted material information from its applications for the Patents-in-Suit to the USPTO when it failed to list the Select Comfort Inventors and/or Select Comfort as co-inventors.

68.    Gentherm was aware that Select Comfort and its former and current employees both conceptualized and significantly contributed to the development of the Patents-in-Suit, as evidenced by Gentherm's relationship with Select Comfort in 2006 and Gentherm's own conduct and statements described herein.

69.    Upon information and belief, Gentherm acted with specific intent to deceive the USPTO when it failed to disclose Select Comfort's role in the subject matter of the Patents-in-Suit and the Select Comfort Inventors as co-inventors of the Patents-in-Suit.

70.    In the alternative to Count One, Select Comfort is entitled to a judicial declaration and order that the Patents-in-Suit are not enforceable.

## COUNT THREE
## (DECLARATORY JUDGMENT OF INVALIDITY)

71.    Select Comfort repeats the allegations above as if fully set forth herein.

72.    In the alternative to Count One, there is an actual and justiciable controversy between the parties concerning the validity of U.S. Patent Nos. 8,322,975, 8,402,579, and 7,966,835, arising under the Patent Act, 35 U.S.C. § 1 *et. seq.*

73.    Upon information and belief, all claims of U.S. Patent Nos. 8,322,975, 8,402,579, and 7,966,835 are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

74.    In the alternative to Count One, Select Comfort is entitled to a judicial declaration and order that U.S. Patent Nos. 8,322,975, 8,402,579, and 7,966,835 are invalid.

## COUNT FOUR
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

75.    Select Comfort repeats the allegations above as if fully set forth herein.

76.    In the alternative to Count One, there is an actual and justiciable controversy between the parties concerning whether Select Comfort's DualTemp™ Layer product infringes any valid claim of U.S. Patent Nos. 8,322,975, 8,402,579, or 7,966,835, arising under the Patent Act, 35 U.S.C. § 1 *et. seq.*, including, but not limited to, 35 U.S.C. § 271.

77.    Select Comfort's DualTemp™ Layer product does not infringe any valid claim of U.S. Patent Nos. 8,322,975, 8,402,579, or 7,966,835.

78.     In the alternative to Count One, Select Comfort is entitled to a judicial declaration and order that Select Comfort and its DualTemp™ Layer product has not and does not infringe any valid claim of U.S. Patent Nos. 8,322,975, 8,402,579, or 7,966,835.

## PRAYER FOR RELIEF

WHEREFORE, Select Comfort prays for judgment as follows:

1.     The Court order that the Select Comfort Inventors are co-inventors, and that Select Comfort is an assignee, of U.S. Patent Nos. 8,322,975, 8,402,579, 7,966,835, 8,191,187, 8,065,763, 7,877,827, 7,996,936, 8,181,290 and any other related patents assigned to Gentherm or patent applications claiming the same or similar subject matter, including without limitation, all divisional patents and continuation patents thereof; or

2.     In the alternative, the Court declare that:

a.     U.S. Patent Nos. 8,322,975, 8,402,579, 7,966,835, 8,191,187, 8,065,763, 7,877,827, 7,996,936, 8,181,290 and any other related patents assigned to Gentherm  or patent applications claiming the same or similar subject matter, including without limitation, all divisional patents and continuation patents thereof, are not enforceable;

b.     U.S. Patent Nos. 8,322,975, 8,402,579, and 7,966,835, are invalid; and/or

      c.     Select Comfort and its DualTemp™ Layer product has not and does not infringe any valid claim of U.S. Patent Nos. 8,322,975, 8,402,579, or 7,966,835.

3.     The Court award such other and further relief as it deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Select Comfort requests a trial by jury on all claims and issues triable by jury.

Dated: August 23, 2013       **OPPENHEIMER WOLFF & DONNELLY LLP**

      By:    s/ Andrew S. Hansen
            Edward M. Laine (#59535)
            Andrew S. Hansen (# 285894)
            Samuel R. Hellfeld (#309954)
            Elizabeth A. Patton (#391431)

      Campbell Mithun Tower, Suite 2000
      222 South Ninth Street
      Minneapolis, Minnesota 55402
      Telephone: (612) 607-7000
      Fax Telephone: (612) 607-7100

      **ATTORNEYS FOR PLAINTIFF SELECT COMFORT CORPORATION**